IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 7372 |
| v. | ) |
| | ) Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, Jason A., has filed a motion for summary judgment seeking reversal or remand of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his claim for Social Security disability benefits (doc. # 12: Pl.'s Mot. for Summ. J.). The Commissioner has filed a response asking the Court to affirm its decision (doc. # 20: Def.'s Mot. for Summ. J.). For the reasons that follow, we grant plaintiff's motion and deny defendant's motion.

I.

Mr. A. was born on October 29, 1995, and qualified for and received supplemental security income ("SSI") as a child (R. 66). As required by social security regulation, when plaintiff turned 18 years old, his eligibility for benefits was reevaluated by the Commissioner, 20 C.F.R. § 416.987, who determined that plaintiff no longer qualified for SSI as of January 1, 2014; accordingly, plaintiff's benefits were terminated on March 31, 2014 (R. 66.). Plaintiff appealed the decision, which was upheld on reconsideration on February 9, 2015, after which he requested a hearing

---

[1] On November 27, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 8).

before an Administrative Law Judge ("ALJ") (R. 68, 74). That hearing took place on September 20, 2016, where plaintiff (who was represented by counsel), his mother, and a vocational expert ("VE") testified (R. 31-65). The ALJ issued an opinion denying Mr. A's claim for benefits on March 13, 2017 (R. 10-30). On August 8, 2017, the Appeals Council upheld the ALJ's determination, making it the final opinion of the Commissioner (R. 1-6). *See* 20 C.F.R. § 404.981; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## II.

Plaintiff began receiving childhood disability benefits on April 12, 2000, due to a learning disorder (R. 66). When he turned age eighteen, plaintiff's eligibility for benefits was reevaluated under the same standards used for determining whether an adult is disabled (R. 13). Therefore, the ALJ undertook the familiar five-step process for determining disability. 20 C.F.R. § 404.1520.

At Step One, the ALJ explained that plaintiff attained age 18 on October 29, 2013, and was notified he was no longer disabled as of January 1, 2014.[2] At Step Two, the ALJ found that plaintiff had the severe impairments of anxiety, intellectual disability – moderate, learning disability, and attention deficit hyperactivity disorder ("ADHD") (R. 15). At Step Three, the ALJ found that plaintiff's impairments did not meet the severity of any Listings at 20 C.F.R. §§ 416.920(d), 416.925 and 461.926.

Specifically, as relevant to this opinion, the ALJ found that plaintiff did not meet Listing 12.05: Intellectual Disorder.[3] As relevant here, Section B of Listing 12.05 requires that plaintiff have a maximum IQ of 70 and exhibit either one extreme or two marked limitations in four broad

---

[2] Step One, which considers whether a claimant is presently engaged in substantial gainful activity, is inapplicable when reevaluating disability at age 18. 20 C.F.R. § 416.987(b).

[3] The ALJ also found that plaintiff did not meet Listings 12.02, 12.06, and 12.11. Plaintiff does not dispute these findings.

2

areas of functioning: (1) understanding, remembering, or applying information; (2) interaction with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing themselves (R. 16).

With respect to understanding, remembering, or applying information, the ALJ found that the plaintiff had moderate limitations. In making this determination, the ALJ noted that plaintiff was diagnosed with intellectual disability – moderate, learning disability, and ADHD, and assessed as having a full-scale IQ score of 63 in 2005 and 57 in May 2015 (R. 16). The ALJ also noted that plaintiff was enrolled in special education classes throughout high school, and his educational records show that he had deficits in working memory, processing speed, and classroom performance (*Id.*). However, as evidence showing that plaintiff was not more than moderately limited in this area, the ALJ pointed to the fact that plaintiff was able to communicate in three languages and was able to fulfill the requirements needed to graduate high school, achieving a cumulative G.P.A. of 3.07 (*Id.*).

The ALJ determined that plaintiff had only mild limitations in interacting with others (R. 16). While the record contained evidence that plaintiff got frustrated easily, had angry outbursts, and had difficulty interacting appropriately with others, none of plaintiff's teachers or treatment providers reported problems with his behavior or with his social-emotional functioning (*Id.*). Instead, his teachers noted that plaintiff was respectful, hardworking, kind, and willing to learn, and his treaters observed normal mood, affect, behavior, judgment, and thought content (*Id.*).

The ALJ found plaintiff had moderate limitations with regard to concentrating, persisting, or maintaining pace (R. 16). The ALJ pointed to plaintiff's IQ scores and his attendance in special education classes because of his intellectual disability, learning disability, and ADHD (*Id.*). The ALJ noted that the record also documented additional deficits in working memory, processing

3

speed and classroom performance (R. 17). However, in finding that these deficits only revealed moderate limitations, the ALJ pointed out that plaintiff's teachers assessed him as hardworking, willing to learn, and engaged with the material, and his Individual Education Plan ("IEP") documented "significant academic progress," including graduating with a 3.07 G.P.A. (*Id.*). The ALJ particularly noted that despite earlier concerns with plaintiff's reading and writing abilities, his English teacher reported that plaintiff got an "A" in her class, participated regularly, "really pays attention during lessons," offered to read out loud, and always did his homework (*Id.*).

For the function of adapting or managing oneself, the ALJ found that plaintiff had mild limitations, explaining that "despite some limitations, the claimant's teachers provided no indication that he demonstrated limitations in self-care as well as behavior and adaptive functioning" (*Id.*). The ALJ cited to testimony from plaintiff and his mother, who both reported that he was generally able to attend to his personal care tasks, complete basic household chores, and take classes at community college, (although, as we explain below, plaintiff's degree of success in community college is in dispute) (*Id.*). The ALJ found it notable that plaintiff's testimony and income records revealed evidence of work activity during his period of alleged disability (*Id.*).

Based on these findings, the ALJ found that the Section B requirements of Listing 12.05 were not met because "the record as a whole fails to demonstrate more than moderate limitations in any of the aforementioned areas of mental functioning" (R. 19).

At Step Four, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with the following non-exertional limitations: he could perform simple, routine, and repetitive tasks in a low-stress environment that requires only occasional judgment, decision-making, and work place changes, with no production

rate requirements" (*Id.*). At Step Five, the ALJ found that, with his RFC, plaintiff was able to perform a number of jobs in the national economy (R. 24).

### III.

The Court must uphold the ALJ's decision if it is supported by substantial evidence, even if the Court might have decided the case differently in the first instance. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lopez v. Berryhill*, 340 F.Supp.3d 696, 701 (N.D. Ill. 2018), *internal citations omitted*. To determine whether substantial evidence exists, the Court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Lopez*, 340 F.Supp.3d at 701, *citing Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). Importantly, in the Seventh Circuit, an ALJ has an obligation to build an accurate and logical bridge between the evidence and the result, in order to allow for meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Thus, an ALJ's opinion must permit a court to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015). Even if a court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Lopez*, 340 F.Supp.3d at 701, *citing Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

Plaintiff argues that remand is required because: (1) the ALJ erred in finding at Step Three that plaintiff did not meet Listing 12.05; (2) the ALJ's RFC assessment failed to properly account for all of plaintiff's limitations; (3) the ALJ improperly assessed plaintiff's credibility; and (4) the ALJ did not support his decision to assign lesser weights to certain of plaintiff's doctors (Doc. # 13: Pl. Mem. in Support at 6). We remand the case because the ALJ failed to sufficiently trace the

5

path from the evidence to his finding that plaintiff did not meet Listing 12.05 B. Because we remand on this ground, we do not reach the plaintiff's other assignments of error.

### A.

In deciding that plaintiff did not meet Listing 12.05 B, the ALJ focused on evidence that tended to support his determination that plaintiff was only moderately limited in the areas of understanding, remembering, and applying information, and concentrating, persisting and maintaining pace, while either ignoring or mischaracterizing evidence that suggested greater deficiencies. While ALJs are not required to discuss every piece of evidence in the record in favor of their determination, they are not allowed to "cherry-pick" from the record, discussing only the evidence that supports their conclusion while ignoring the evidence that may contradict it. *see Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) *See McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011).

In this case, the ALJ relied on nearly the same evidence – plaintiff's success in special education classes in high school – to support his finding that plaintiff was no more than moderately limited in any of the Listing 12.05 B areas. It is true that plaintiff graduated with a 3.07 GPA, and his teachers assessed him as cooperative, respectful, hardworking, willing to learn, and engaged in classroom activities (R. 20). From this, the ALJ concluded that "the claimant's educational records as a whole fail to reveal significant loss of intellectual or academic functioning after January 2014 sufficient to warrant a finding of disability" (R. 20). This is not an accurate characterization of the record; there is evidence of plaintiff's abilities and intellectual functioning outside the high school special education environment, which the ALJ did not adequately address, which paints a conflicting picture.

*First,* the ALJ mentions, but does not discuss, plaintiff's six-point drop in IQ score from 63 in 2005, when he was first found eligible for disability benefits, to 57 in 2015. We recognize that these scores were assessed ten years apart, and there may be any number of reasons for the drop that do not bear on plaintiff's intellectual ability. The ALJ was within his right to consider and then reject the second IQ score, as long as he adequately explained his reasoning. But, the ALJ did not do so; instead, he simply mentioned that plaintiff achieved each IQ score at a different time, without considering the significance of the decline. While the ALJ gave only some weight to the opinion of Dr. Lorenz, who administered plaintiff's 2015 IQ test on which he scored a 57, the ALJ's reasons for giving Dr. Lorenz only some weight do not mention the IQ score or indicate that the ALJ questioned the validity of that test score.

The ALJ's failure to address the decline in plaintiff's IQ scores requires remand. In his opinion, the ALJ specifically states that there was no evidence plaintiff lost academic or intellectual function after January 2014. The ALJ's failure to consider whether the drop in IQ scores is evidence of such a drop does not allow us to trace his reasoning with respect to his decision regarding the Listing. *See, Warren v. Colvin,* 565 Fed.Appx. 540, 544 (7th Cir. 2014) (In light of presumed stability of intellectual abilities over time, ALJ must discuss discrepancy between scores).[4]

*Second,* the ALJ mentioned, but failed to explain why, other evidence of plaintiff's diminished intellectual functioning did not support more than moderate limitations in the Listing

---

[4] The ALJ's discussion and analysis of the opinion of Amanda Lorenz, Ph.D., the doctor who administered the 2015 IQ test, is similarly inadequate. The ALJ gave "some weight" to Dr. Lorenz's opinion that plaintiff should pursue vocational training, but he also found that her opinions were "far too cursory and fail to specify what mental tasks and job duties the claimant can or cannot perform," and that "the rest of the claimant's medical records fail to demonstrate the level of intellectual and adaptive limitations observed by Dr. Lorenz" (R. 21, 23). The ALJ does not explain how he simultaneously concluded that Dr. Lorenz' opinions were (1) too cursory, (2) contained a definable level of intellectual and adaptive limitations that could be measured against other opinions in the record, and (3) were nevertheless deserving of some weight for her opinion that plaintiff should pursue vocational training.

12.05 factors. For example, while he spends considerable time discussing plaintiff's successes in the special education setting in his high school, the ALJ's does not address either the fact that plaintiff failed out of his drivers' education class or that he scored in the seventh percentile on the ACT test (R. 93, 513). The ALJ also fails to consider evidence of plaintiff's failure at the community college level and whether it might show loss of intellectual function after January 2014. While the ALJ recognizes that plaintiff provided conflicting evidence about his ability to attend community college, he testified at a disability hearing in February 2015 that he was getting Bs and Cs, but his mother told an examining psychologist that the college told plaintiff at the end of his first year that his grades were too low for him to continue – the ALJ does not credit either version (*Id.*). While the Court may not reweigh an ALJ's consideration of evidence of disability, in this case, the ALJ did not weigh or discuss any of this evidence in the first place, despite the fact that it tended to contradict the ALJ's assessment of plaintiff's success in high school. *See, e.g., Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("[A]lthough an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it").

*Third*, the ALJ's justification that plaintiff did not show a significant loss of intellectual or academic functioning because no doctor or educator ever recommended or placed him on a "psychotropic medication regimen to help improve his academic functioning due to complaints of diminished concentration and attention" is unsupported by the record (R. 20-22).[5] The ALJ makes this statement twice in his opinion, the implication being that plaintiff's intellectual function and ability to concentrate, persist, and maintain pace could not be disabling because he never took

---

[5] The ALJ offers the same reasoning when discussing medical records from plaintiff's primary care doctor, Nancy Gamarra, M.D., specifically noting that there was "no indication she considered pharmacology to address the claimant's ADHD and intellectual issues" (R. 21-22).

medication for ADHD. This is an improper inference from the ALJ; there is absolutely no support in the record that additional medication could have improved plaintiff's intellectual and/or academic functioning. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ cannot base his decisions on his own independent medical findings). Instead, the ALJ impermissibly played doctor by concluding on his own that medication for ADHD could have improved plaintiff's intellectual or academic functioning, and that the absence of such medication demonstrated that plaintiff was not disabled; there is no medical evidence to support either assumption. *See, Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (ALJ impermissibly "played doctor" by concluding on his own that plaintiff's diabetes was not as severe as alleged because she did not take insulin).

*Fourth*, we find that the ALJ's reliance on plaintiff's work history after age eighteen as evidence that he had only mild limitations in a third Listing 12.05 functional area (adapting and managing oneself) was also in error (R. 17). Although we remand primarily because the ALJ cherry-picked evidence when he found plaintiff had moderate limitations in two other Listing factors, it bears noting that the ALJ points to plaintiff's modest earnings (far less than the level indicative of substantial gainful activity) without mentioning the evidence that every one of plaintiff's attempts to hold a job was either a failure or performed within the confines of a job training program (R. 36-37, 40 ).[6] An attempt to work, particularly an unsuccessful attempt, does not contradict a finding of disability. *Fugate v. Colvin*, No. 14 C 4240, 2016 WL 1043424 at *11 (7th Cir., March 16, 2016).

---

[6] Plaintiff's FICA earnings for 2014 were $1,806.88 and $384.44 for 2015, working in an accommodated job setting (R. 36-37, 214). He also earned $3,052 between June and September 2016, making phone surveys in a call center; he testified that he sometimes had trouble reading the correct script (R. 46, 289-93). When the employer moved business locations, it elected not to continue employing him (R. 36-37). He also worked a single day for Chase Bank, but was let go after the first day of training (R. 46).

9

## IV.

In the remainder of the opinion, the ALJ discussed his analysis of plaintiff's credibility and the weight he gave to the various medical opinions in the record. Because we remand for errors in the ALJ's Step Three analysis, we will not discuss this part of the opinion in detail, except where necessary for our decision. We note, however, that the ALJ discounts many of the medical records or opinions from doctors who either treated or examined plaintiff (Dr. Lorenz, Pilsen Wellness Center, Dr. Salinas) on the ground that their assessments were too cursory or vague to be helpful, and yet gives great weight to non-examining State agency psychological consultants (Drs . Carney, Hudspeth, Kuester) because each of them rendered an opinion after examining the medical and educational evidence in its entirety (R. 22). The ALJ does not explain why he accepted the non-examining doctors' consideration of medical evidence that the ALJ himself finds too vague to be helpful, and should address this issue on remand.

## **CONCLUSION**

For the above reasons, we grant plaintiff's motion for summary judgment (doc. # 12) and deny defendant's motion (doc. # 20). This case is remanded for further determination consistent with this opinion. The case is terminated.

**ENTER:**

_____
SIDNEY I. SCHENKIER
United States Magistrate Judge

**DATE: April 16, 2019**